UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL HORACEK,

    Plaintiff,

v.                                              Case No. 07-13822

DERRICK WILSON,                      HONORABLE AVERN COHN
LIEUTENANT ATKINS, CAPTAIN WALLACE,
SISTER PEGGY DEVANEY, OAKLAND
COUNTY JAIL ADMINISTRATOR, OAKLAND
COUNTY JAIL CLASSIFICATION DEPARTMENT,
MARY, and JOHN DOES,

    Defendants.

_____/

**ORDER
ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION
AND
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
AND
DIRECTING PLAINTIFF TO FILE SUPPLEMENTAL PAPER
WITHIN THIRTY (30) DAYS**

I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff is proceeding pro se and in forma pauperis (IFP).[1] Plaintiff names Derrick Wilson,[2] Lieutenant Atkins, Captain Wallace, Sister Peggy Devaney, Oakland County Jail Administrator, Oakland County Jail Classification Department, and Mary (last name unknown),[3] along with John Does as defendants. Plaintiff makes a host of claims regarding his incarceration at the Oakland County Jail (OCJ) from June 24, 2005 through July 6, 2006 as a pre-trial detainee.[4] The case has been referred to a magistrate judge for pre-trial proceedings and before whom defendants Atkins, Wallace, Devaney, Oakland County Jail Administrator, Oakland County Jail Classification Department (collectively, the

---

[1]Plaintiff is a prolific litigator in this district. A search of the Court's CM/ECF system reveals that plaintiff has been a party in at least a dozen cases, some of which are still open. Most of the cases are prisoner civil rights cases in which plaintiff has challenged various conditions of his confinement while housed at different institutions and at the Oakland County Jail. Notably, in 2005, plaintiff filed a complaint against defendants Derrick Wilson and Peggy Devancy asserting a religious discrimination claim regarding the provision of Kosher meals while at Oakland County Jail. Horacek v. Derrick LNU, 05-40302. The district court dismissed the complaint without prejudice for failure to exhaust administrative remedies. The Oakland County defendants have not argued that any of plaintiff's claims in the instant case are not exhausted.

Plaintiff also has a prisoner civil rights case pending before a different district judge claiming a First Amendment violation with regard to access to legal mail while at the Oakland County Jail. Horacek v. Seaman, et al, 08-10866. Also pending is plaintiff's prisoner civil rights case claiming a First Amendment violation while housed at an MDOC facility in Macomb County regarding the denial of participation in the Kosher meal program. Horacek v. Burnett, 07-11885.

[2]Wilson, who is apparently the Food Service Director for Aramark, has only recently been served.

[3]"Mary," an apparent employee of Aramark, has not been served.

[4]Plaintiff is now on parole.

defendants) filed a motion for summary judgment. The magistrate judge issued a report and recommendation (MJRR), recommending that defendants' motion be granted as to plaintiff's federal claims and his state law claim be dismissed without prejudice.

Before the Court are plaintiff's objections to the MJRR. For the reasons that follow, the MJRR will be adopted in part and rejected in part, defendants' motion for summary judgment will be granted in part and denied in part. As will be explained, only plaintiff's First Amendment § 1983 claim and statutory claim regarding the provision of Kosher meals continues. Plaintiff shall file a supplemental paper regarding this claim within thirty (30) days as detailed below.

## II. Background

Plaintiff was hospitalized on June 24, 2005 due to knee injuries he sustained in a car accident. He was sent to the Oakland County Jail (OCJ) on June 27, 2005. Plaintiff's complaint alleges a series of wrongful conduct by defendants with respect to his housing placement, religion, protected activity, medical care, the provision of Kosher meals, and his ability to wear a Yarmulke. He does not say which conduct is attributed to which defendants. Plaintiff was initially housed in the jail clinic and confined to a bed. He was then moved to the jail annex, then a multi-person cell, and single person cell. Upon arriving at the OCJ, plaintiff requested a Kosher diet. There appears to be nothing said by plaintiff to indicate he traditionally eats only Kosher meals.

Plaintiff's complaint does not set forth specific counts being asserted; however defendants broke down plaintiff's claims as follows: (1) violation of First Amendment right to freedom and exercise of religion, violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a) (RLUIPA), (2) violation of the 14th

Amendment Equal Protection, (3) Religious Discrimination, (4) Racial/Ethnic discrimination, (5) Cruel and Unusual Punishment/Inhumane Treatment, (6) Due Process Violation, (7) First Amendment Retaliation, (8) Deliberate Indifference to a Serious Medical Need, (9) Intentional Infliction of Emotional Distress, and (10) Violation of the Americans With Disabilities Act.

The magistrate judge broke down its analysis of plaintiff's claims as follows: (1) First Amendment, Religious Exercise, and RLUIPA claims, (2) First Amendment Retaliation, (3) Equal Protection and Discrimination, (4) Deliberate Indifference to Medical Needs, (5) Due Process, (6) ADA, (7) Qualified Immunity, and (8) State Law Claims. As explained below, the Court categorized plaintiff's claims slightly differently.

### III. Analysis

#### A. Plaintiff's Medical Claims

Plaintiff claims that defendants were deliberately indifferent to his serious medical needs in violation of the Eight Amendment. Plaintiff's claim pertains to (1) allegedly being placed in inaccessible housing (with other inmates) for several months, (2) being denied ice packs for his knee. The magistrate judge fully considered these allegations in light of the record and the relevant law on pages 30-33 of the MJRR and concluded that they did not rise to the level of a constitutional deprivation. The Court agrees. Plaintiff's objections simply restate the arguments considered and rejected by the magistrate judge. Plaintiff's medical claim fails.

#### B. ADA Claim

Plaintiff also claims that defendants violated the ADA. The magistrate judge recommends that this claim be dismissed because the defendants, as public

4

employees, are not subject to suit in their individual capacity.  The Court agrees for the reasons stated in the MJRR at p. 36.  This claim fails.

Moreover, even if plaintiff were to amend his complaint to sue the defendants in their official capacity, his claim would still fail because, as explained in defendants' brief at p. 18, plaintiff cannot establish that he was disabled within the meaning of the ADA.  The restrictions related to his knee surgery were only temporary rather than permanent and did not, as a matter of law, constitute a substantial limitation of a major life activity.

### C.  Racial/Ethnic Discrimination Claims

Plaintiff is a Caucasian male whose family is from the Czech Republic.  To the extent he claims discrimination on these grounds, the claim must be dismissed inasmuch as these categories are not protected classes.  There is also no evidence that the defendants took any action against plaintiff because of his race or ethnicity.

To the extent he claims discrimination because of he is Jewish, that claim is addressed below in the context of his religious claims.

### D.  Religious Claims

Plaintiff raises a host of different claims regarding his treatment due to his religion.  These claims relate to the provision of a Kosher diet and the wearing of a yarmulke outside of his cell.  Plaintiff asserts violations of the First Amendment, RLUIPA, First Amendment Retaliation, Discrimination, Equal Protection, and Due Process.  The magistrate judge recommends that all of these claims be dismissed.  Plaintiff's objections to his religious claims merit some consideration.

1. First Amendment Free Exercise and RLUIPA Claims

a. The Law

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

Here, plaintiff claims that the defendants deprived him of rights secured by the First Amendment. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." The First Amendment is applicable to the States by virtue of its incorporation by the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940). Prison inmates are entitled to the protection of the First Amendment, including the free exercise clause. O'Lone v. Shabazz, 482 U.S. 342, 348,(1987). However, an inmate's constitutionally protected rights, including his First Amendment rights, must be balanced against the institution's need to maintain security and order within the prison.

In Turner v. Safley, 482 U.S. 78 (1987), the Supreme Court held that prison regulations may infringe on a prisoner's constitutional rights as long as they are rationally related to a legitimate penological concern. See also Olim v. Wakinekona, 461 U.S. 238 (1983). "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill equipped." Bruce v. Ylst, 351 F.3d 1283, 1290 (9th Cir. 2003).

In the context of the First Amendment free exercise clause, "[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" Flagner v. Wilkinson, 241 F.3d 475, 481 (6th Cir. 2001), quoting Kent v. Johnson, 821 F.2d 1220, 1224 (6th Cir.1987). "A religious belief which is not sincerely held or a belief which is purely secular does not require the prison to consider accommodation." Mosier v. Maynard, D.O.C., 937 F.2d 1521, 1526 (10th Cir. 1991), citing Johnson v. Moore, 926 F.2d 921, 923 (9th Cir. 1991).

With respect to RLUIPA,[5] the statute states in pertinent part:

"No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person
(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest."

42 U.S.C. § 2000cc-1(a).[6]  Thus, a more stringent, less deferential standard is applied

---

[5]The defendants argued that plaintiff failed to state a claim under RLUIPA because the OCJ does not receive federal financial assistance as required by RLUIPA. The magistrate judge rejected this argument. See MJRR at p. 25. Defendants have not objected to this finding.

[6]The defendants are being sued in their individual capacities. In Price v. Caruso, 451 F. Supp. 2d 889, 895, 904, fn.6 (E.D. Mich. 2006), the district court adopted a Magistrate Judge's Report and Recommendation finding that a RLUIPA claim would only lie against defendants named in their official capacities, not their individual capacities. However, the Sixth Circuit has at least implicitly acknowledged that a RLUIPA action can be brought against defendants named in their individual capacities. See Figel v. Overton, 263 Fed.Appx. 456, 458-459 (6th Cir. 2008), applying a qualified immunity analysis to a RLUIPA claim. Qualified immunity is a defense only available to individual defendants, not to a state or municipality, or defendants sued in their official capacities. Kentucky v. Graham, 473 U.S. 159 (1985). See also Farnsworth v. Baxter, 2007 WL 2793364, *2 (W.D. Tenn. 2007) (adopting the reasoning of Daker v. Ferrero,

to a RLUIPA claim (the least restrictive means of furthering a compelling governmental interest) than to a First Amendment/§1983 claim (reasonably related to legitimate penological interests). See Cutter v. Wilkinson, 544 U.S. 709 (2005). Under RLUIPA, the initial burden of showing a substantial burden on a religious practice lies with the Plaintiff. 42 U.S.C. § 2000cc-2(b). The burden then shifts to the government to demonstrate that the compelling interest test is satisfied. See id. A governmental practice, decision or regulation imposes a "substantial burden" on the exercise of religion "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." Adkins v. Kaspar, 393 F.3d 559, 569-70 (5th Cir. 2004). Stated differently by the Seventh Circuit, "a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise...effectively impracticable." Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003).

b. Discussion

(i) Provision of Kosher Meals

It is undisputed that OCJ has a policy regarding the provision of food service requirements for religious needs, stating in part that it will "provide inmates with a legitimate . . . religious basis for a special diet to receive the appropriate dietary needs." The policy further states that the Food Service Manager is responsible for compliance

---

2006 WL 346440, *10 (N.D. Ga. 2006) that "this Court reads the RLUIPA to permit suit against state officials in their individual capacities" ). The defendants have not raised this point. In any event, the Court assumes, as did the magistrate judge, that a RLUIPA claim can be brought against a defendant sued both in his individual and official capacities.

8

with applicable standards pertaining to food service preparation, including special diets. See Plaintiff's Exhibit F - Oakland County Sheriff's Office Policies and Procedures, Number 131, Food Service, Nutritional Requirements and Hunger Strikes. It is also undisputed that plaintiff requested Kosher meals in observance of his Jewish faith.

The parties, however, dispute the adequacy of the Kosher meals plaintiff was provided. According to defendants, plaintiff's complaints that his kosher meals were occasionally not properly prepared or presented does not qualify as a substantial burden. Plaintiff says he was often forced to chose between eating a meal which was not Kosher or starvation, which substantially burdened his religious beliefs.

In support, defendants say that the record shows they responded to plaintiff's complaints and consulted with a rabbi, Rabbi Nelson, who apparently indicated to defendant Atkins that they were "doing everything they could possibly do." Defendants also say that only a small number of meals provided to plaintiff were not Kosher.

Plaintiff's evidence consists of his assertions that only a small handful (4 or 5) of meals served to him during his time at the OCJ were actually Kosher. He also provided a chart he prepared which details his complaints at the OCJ and defendants' responses. He also says that he spoke with Rabbi Nelson who told him that the food service program was not in compliance.

The magistrate judge considered the record and concluded that while "[p]erhaps the OCJ kosher diet program as applied to plaintiff was imperfect . . . plaintiff has brought forth no evidence to show that the program itself or as implemented with respect to plaintiff, imposed a substantial burden on plaintiff's practice of his religion." MJRR at p. 22.

The Court disagrees. The record shows that there is a disputed issue of fact as to the extent to which plaintiff was provided proper kosher meals in accordance with the policy and whether it substantially burdened his ability to practice his religion. Notably, as plaintiff points out, there is no affidavit from Rabbi Nelson and the parties have differing accounts of his view on the extent to which OCJ provided plaintiff with Kosher meals. The magistrate judge also found plaintiff's chart did not constitute admissible evidence because its contents cannot be verified. Yet, the magistrate judge credits defendant Adkins' statement, which appears in a response to one of plaintiff's grievances about his failure to get a Kosher meal, that Rabbi Nelson said defendants were doing all they could. Adkins' statement also has admissibility concerns. The record shows that plaintiff complained numerous times about Kosher meals and defendants do not deny that plaintiff was not always afforded Kosher meals. The magistrate judge summarizes plaintiff's complaints, stated at his deposition, on pages 5-7 of the MJRR which will not be repeated. The extent to which plaintiff was given proper Kosher meals and whether or not defendants' failure to provide them constitutes a substantial burden is for a trier of fact on the record as it stands. As such, summary judgment is not appropriate at this time on plaintiff's claims under the First Amendment and RLUIPA regarding the provision of Kosher meals.

(ii) Wearing of a Yarmulke

Plaintiff says that defendants violated his First Amendment rights and RLUIPA by not allowing him to wear a yarmulke outside of his cell. It is undisputed that OCJ has a policy against the wearing of religious symbols in common areas, also called pod areas, due to safety and security concerns. Plaintiff was, however, informed that if he wanted

10

to wear his yarmulke while eating he could do so provided he remain in his cell. Plaintiff says that his rights were violated because other inmates were permitted to wear rosaries in the "pod area." Defendants deny this and state that the policy is uniformly enforced and that the policy itself does not infringe on plaintiff's constitutional rights.

The magistrate judge concluded that the policy is rationally related to legitimate penological concerns. The Court agrees. Plaintiff's objections in this regard simply restate his position argued to the magistrate judge. Moreover, the Court agrees with the magistrate judge that plaintiff's unsupported statement that other inmates wore rosaries is insufficient to create a genuine issue of material fact as to whether his religious rights were violated. This claim fails.

### 2. Retaliation

Plaintiff also claims that defendants retaliated against him for exercising his religious rights. Plaintiff says that the retaliation began after plaintiff filed his initial lawsuit complaining about the food service in 2005, see n. 1 supra, and took the form of being placed in non-accessible housing.

The magistrate judge recommends that this claim be dismissed because plaintiff has no evidence connecting the alleged retaliatory acts to the filing of his complaint. The Court agrees. Plaintiff's objections fail to convince the Court that the magistrate judge erred. As such, this claim fails.

### 3. Equal Protection/Due Process/Discrimination

Plaintiff also says that defendants violated his equal protection and due process rights and otherwise discriminated against him because of his religion. As to his equal

protection/discrimination claim, the magistrate judge says that there is no evidence that defendants treated him differently than similarly situated inmates. The Court agrees. There is also no evidence that defendants acted with any discriminatory intent or purpose necessary to make out an equal protection claim with regard to either the provision of Kosher meals or plaintiff's ability to wear a yarmulke. Plaintiff's objections present the same arguments rejected by the magistrate judge. This claim also fails.

As to due process, the magistrate judge found that plaintiff has not identified conduct by defendants which "shocks the conscience." Plaintiff says that the failure to provide proper Kosher meals for over a year and not permitting him to wear a Yarmulke shocks and placing him in an in-accessible cell shocks the conscience. The Court disagrees. Defendants' actions simply do not rise to the level required to make out a due process claim. Plaintiff's objections fails to convince the Court that this claim should proceed. Accordingly, the claim must be dismissed.

### E.  Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. Because the Court has found only that plaintiff's First Amendment and RLUIPA claims concerning the provision of Kosher meals should proceed further, it is not necessary to address qualified immunity with respect to any other claims.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Phillips v. Roane County, 534 F.3d 531, 538 (6th Cir. 2008) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries:  "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" Id. at 538-39 (citing Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir.2006)); cf. Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, --- L.Ed.2d ---- (2009) (holding that the two-part test is not longer considered mandatory; thereby freeing district courts from rigidly, and potentially wastefully, applying the two-part test in cases that could more efficiently be resolved by a modified application of that framework).

Here, as explained above, the plaintiff has demonstrated a genuine question of material fact regarding the denial of a constitutional right under the First Amendment and a federal statutory right under RLUIPA with respect to the provision of Kosher meals.  At the time plaintiff was housed at the OCJ in 2005 to 2006, it was clearly established "that prison officials could not substantially burden inmates' rights to religious exercise without some justification."  Figel v. Overton, 263 Fed.Apx. at 459 (citing Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006)).  In Lovelace, a case involving Muslim dietary restrictions during Ramadan, the court stated:

> Under both the Free Exercise Clause and RLUIPA in its most elemental form, a prisoner has a 'clearly established ... right to a diet consistent with his ... religious scruples,' including proper food during Ramadan.  Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir.2003); see also McEachin, 357 F.3d at 203-04 & n. 7 (collecting cases). A prison official violates this clearly established right if he intentionally and without sufficient justification denies an inmate his religiously mandated diet.  See Meyer v. Teslik, 411 F.Supp.2d 983, 991 (W.D. Wis.2006).  Thus, under both the First Amendment *and* any straightforward interpretation of RLUIPA, the unlawfulness of intentional and unjustified deprivations of Ramadan meals was apparent at the time of the incident.

13

472 F.3d at 198-99.  See also Cruz v. Beto, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (concluding that "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty").

In 2006, plaintiff also had clearly established rights under RLUIPA, a statute that President Clinton signed into law in September of 2000, and which the Supreme Court ruled was constitutional on May 31, 2005.  Cutter v. Wilkinson, supra.  See Figel v. Overton, supra, 263 Fed.Apx. at 458-59.  Therefore, defendants are not entitled to the defense of qualified immunity with regard to this claim.

As to plaintiff's other claims, in light of finding that plaintiff has not shown a violation of his constitutional rights, there is no need to address defendants' entitlement to qualified immunity.

### F.  State Law Claim

Plaintiff has also asserted a claim under state law for intentional infliction of emotional distress.  The magistrate judge recommends that in light of finding no viable federal claims, the Court decline to exercise supplemental jurisdiction and dismiss the claim without prejudice.  Given, however, that the Court has determined that plaintiff has a viable claim under the First Amendment and RLUIPA, the Court prefers to address it on the merits.  As defendants point out, the conduct alleged must be extreme and outrageous.  Despite plaintiff's contention to the contrary, none of the defendants' actions rises to this level.  As such, this claim is dismissed.

### IV.  Conclusion

      For the reasons stated above, the MJRR is ADOPTED IN PART AND REJECTED IN PART.  Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.  The sole claims remaining at this point are plaintiff's First Amendment claim under § 1983 and statutory claim under RLUIPA regarding the provision of Kosher meals.  Before the case proceeds further, however, plaintiff shall file a paper within thirty (30) days detailing:

1. The legitimacy of his right to Kosher meals
2. A list of which defendant(s) were responsible for the allegedly inadequate provision of Kosher meals and the role of each defendant regarding the provision of Kosher meals.

      SO ORDERED.

                                        s/Avern Cohn  
                                        AVERN COHN  
                                        UNITED STATES DISTRICT JUDGE

Dated:  March 30, 2009

I hereby certify that a copy of the foregoing document was mailed to Daniel Horacek 218347, 951 Indianwood Road, Lake Orion, MI 48362 and the attorneys of record on this date, March 30, 2009, by electronic and/or ordinary mail.

                                        s/Julie Owens  
                                        Case Manager, (313) 234-5160